**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC DELGADILLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-4194 |
| | ) | |
| MANPOWERGROUP US, INC., | ) | **Jury Trial Requested** |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

NOW COMES the Plaintiff Eric Delgadillo ("Plaintiff"), by and through his undersigned attorneys and for his Complaint against the Defendant, ManpowerGroup US, Inc. ("Defendant"), states as follows:

**NATURE OF ACTION**

1.     This is a wrongful termination and retaliation case against Defendant for illegally terminating Plaintiff because of his sex, sexual orientation, and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §12101, et seq., Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "ADA") and for illegally retaliating against him by terminating him because he requested time off under the Family and Medical Leave Act, 29 U.S.C. 2601, et seq. (the "FMLA") and because he requested a reasonable accommodation for his disability under the ADA in violation of the ADA.

## JURISDICTION AND VENUE

2.      This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which states that federal courts have primary jurisdiction over actions that arise under the laws of the United States.

3.      Venue lies in the Northern District of Illinois because Plaintiff is a resident of this District, Defendant was engaged in business in this District, and the events giving rise to the claims alleged in this Complaint occurred in this District.

## PARTIES

4.      Plaintiff Eric Delgadillo ("Plaintiff") is a resident of Chicago, Illinois, and worked as a Business Development Manager ("BDM") in Defendant's Chicago Office of its Experis Engineering Business Unit, located at 525 West Monroe, Chicago, Illinois, from February 2016 until he was terminated by Defendant on February 12, 2018.

5.      Defendant is a contingent and permanent recruitment and workforce management solutions company qualified and doing business in Illinois, including in Cook County.

6.      At all relevant times, Defendant was an "employer" and Plaintiff was an "employee" as defined under the ADA (42 U.S.C § 12111) in that Defendant had 15 or more employees in Illinois for each working day in each of the 20 or more calendar weeks during the relevant calendar years.

7.      At all relevant times, Defendant was an "employer" and Plaintiff was an "employee" as defined under Title VII (42 U.S.C. § 2000e) in that Defendant had 15 or more employees in Illinois for each working day in each of the 20 or more calendar weeks during the relevant calendar years and was engaged in an industry affecting commerce.

8.    At all relevant times, Defendant was an "employer" and Plaintiff was an "eligible employee" as defined under the FMLA (29 U.S.C § 2611) in that Defendant was and is engaged in an industry or activity affecting commerce and employed 50 or more for each working day during each of 20 or more calendar workweeks within 75 miles of its Chicago location and Plaintiff was employed by Defendant for at least 12 months at the location in Chicago, Illinois and worked at least 1,250 hours during the 12 months before he requested leave under the FMLA.

9.    At all relevant times, Plaintiff was qualified to perform his job duties with Defendant and did in fact satisfactorily performed his job duties with Defendant while employed there.

## PROCEDURAL BACKGROUND

10.    On April 26, 2018, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex and disability discrimination and retaliation. A true and correct copy of that charge is attached hereto as Exhibit 1.

11.    On May 29, 2018, the EEOC issued Plaintiff a notice of right to sue, which entitled him to institute a civil action within 90 days of the date of receipt thereof. A true and correct copy of that notice is attached hereto as Exhibit 2.

12.    Plaintiff has filed this lawsuit within 90 days of receiving the EEOC's notice of right to sue, thereby fulfilling all conditions precedent to the institution of his claims under the ADA and Title VII.

## FACTS

### Background

13.     In February 2016, Plaintiff began working for Defendant as a BDM in Defendant's Chicago Office of its Experis Engineering Business Unit. In that role, Plaintiff reported to Experis' Chicago Sales Manager.

14.     At the time Plaintiff was hired, the position of Chicago Sales Manager was vacant and thus he reported directly to Experis' Regional Managing Director who was Mr. Chris Layden from February 2016 to August 2017 and then Mike Ray from September 2017 to December 2017.

15.     Meanwhile, Sarah Frank ("Frank") became involved in Plaintiff's unit and, by late 2017, it was clear that she was slated to become Experis' next Chicago Sales Manager. It became official in January 2018, after which Plaintiff formally reported directly to Frank.

16.     When Plaintiff started in February 2016 and until he was terminated, his role was to build new partnerships with manufacturing companies in the greater Chicagoland area whereby Defendant would supply those companies with engineering workforce solutions, such as supplying companies with contingent or direct-hire workers.

17.     Plaintiff was very successful in developing new engineering workforce business for Defendant's Chicago office and performed superbly in his role. In fact, at the time of his termination, Plaintiff was ranked first in sales among BDMs in Defendant's Expiris Unit of its Chicago office, third in sales for his region, and seventh in sales for the entire US market.

*Medical Complications*

18.     On February 7, 2018, after Plaintiff finished showering for work that morning, he felt an acute pain in his inner groin area. The pain was burning and excruciating. Despite his intense pain, Plaintiff hoped that it would subside at work. But it didn't. In fact, it got much worse. Plaintiff's lymph node in his groin area began to swell up significantly – almost to the size of a golf ball – which caused his severe pain to become unbearable.

19.     When Plaintiff arrived at work around 7:30 am that morning, Plaintiff informed Frank that he was having intense pain in his groin area and that he thought he was having a hernia or something worse.

20.     While Plaintiff was informing Frank about his medical condition, he had to put pressure on his groin area to help relieve some of the intense and excruciating pain. At that time, Frank, who is not a medical doctor, rudely told Plaintiff: "I don't think you need to go to the doctor. You're fine."

21.     Blind-sided by Frank's odd and weird statement, Plaintiff gave Frank a puzzled look and politely said: "I don't think I'm fine. I think I have a hernia or something like it." In response, Frank chastised him for not being able to handle pain like "women" could have when she shockingly scolded him: "You would make a terrible woman. Just wait it out." After this sexually-discriminatory remark – clearly making fun of Plaintiff for not being as "tough" as a "woman" – Plaintiff did as Frank instructed and, despite the intense pain, went back to his cubicle.

22.     Yet the pain got much worse. The Plaintiff was visibly writhed in pain. At some point when Plaintiff was visibly writhing in pain, Frank walked past his cubicle,

chuckled at Plaintiff, and told him in a mocking manner "you're fine" as she laughed out loud at him. The Plaintiff's pain got so bad that Plaintiff had to inform Frank around 9:00 am that he was requesting a medical-related leave from work because of a serious health condition that made him unable to perform the functions of the position of such employee at the time of the intense groin pain. In response, Frank did not even bother to look at a writhing-in-pain Plaintiff and simply scoffed "do what you have to do" and thus begrudgingly granted Plaintiff's FMLA request.

23.     After leaving work, Plaintiff saw a doctor, who immediately observed Plaintiff's massively swollen groin lymph node. The doctor told Plaintiff that he should have come in much earlier. In fact, Plaintiff would have had gone to the doctor hours earlier had Frank not made fun of him and mocked him for not being as "tough" as a "woman." The doctor told Plaintiff that he would need to do a blood test to confirm any diagnosis. The doctor soberly confided in Plaintiff that, because of Plaintiff's gay sexual orientation, Plaintiff's swollen groin lymph nodes likely indicated that Plaintiff had contracted the HIV virus. The doctor said that, while there might be other causes for Plaintiff's swollen groin lymph nodes, HIV was the most likely cause. The doctor added that the results of the blood test – which he said could take some time – were required for him to confirm an HIV diagnosis.

*Accommodation/Leave Requests*

24.     After learning of the doctor's HIV prediction, Plaintiff, at 11:48 am that morning, took a photo of the note that the doctor had given him and emailed it to Frank. The doctor's note read: "[Plaintiff] may return to work on 2/10/2018. He should be able to work from home during this time [i.e., between 2/7/2018 and 2/10/2018]." The reason why

6

Plaintiff's doctor wanted him to work from home was because Plaintiff's groin lymph node was painful and so swollen – to the size of a golf ball – that wearing a belt or even buttoning his pants would have been excruciatingly painful.

25.     When Plaintiff talked to Frank on the phone later that day, Plaintiff updated Frank about everything including his doctor's HIV prediction. Plaintiff specifically told Frank that the doctor thought that, because of Plaintiff's gay sexual orientation, Plaintiff's swollen groin lymph nodes were indicative of Plaintiff having contracted the HIV virus. In response, Frank coldly responded "ok" and then abruptly steered the conversation to work and about how she would be emailing him her "daily expectations" while Plaintiff worked remotely from home over the next few days. In fact, Frank was furious about Plaintiff's doctor's note and about his requested reasonable accommodation to work from home.

26.     Frank emailed Plaintiff almost immediately after receiving the doctor's note in which she memorialized her frustration with Plaintiff's remote-work request. Specifically, at 12:16 pm – after receiving Plaintiff's doctor's note less than 30 minutes earlier and learning that Plaintiff likely had contracted HIV – Frank sent an email with the subject line "Tour with Stephen" to Plaintiff in which she wrote: "Can you let your client know that I can attend with Stephen on Friday and send us both a calendar invite? This would be the second time that you had to cancel the tour you guys planned and I want to make sure we have some representation/don't have to cancel again." In other words, as soon as Frank found out that Plaintiff's gay lifestyle had likely caused him to contract HIV – which likely would result in even more work-related absences – Frank blamed Plaintiff's medical condition and requested reasonable accommodation as causing a potential

"cancel[lation]" of a work-related tour that was supposed to happen while Plaintiff was working from home under his doctor's care.

27.     After receiving this email, Plaintiff quickly saw the writing on the wall. As background, Jenny Rodriguez – who had the same position at Plaintiff and who worked from home without a medical note – was treated much better under similar circumstances and was not the target of the fury of Frank as evidenced by Frank's email. The only difference was that Ms. Rodriguez was not a man, not gay, and did not suffer from likely HIV symptoms that required him to work from home. Seeing the writing on the wall, Plaintiff emailed Frank the following: "I'm sorry, I have a doctor's note saying I need to work remote this week. It's ok for Jenny . . . to work from home the last 3 weeks but then I have a medical issue it's an issue. I don't understand."

28.     The next day, on Thursday, February 8, 2017, Frank called Plaintiff at 7:30 am. After they talked briefly about work, Plaintiff reiterated his concerns about not being discriminated against because of his sexual orientation to which Ms. Frank admitted to Plaintiff that her email to him the day before was "aggressive." Plaintiff thanked Frank for being honest about her email being "aggressive." Plaintiff then told Frank that he was very concerned about the blood test results coming back positive for HIV, which his doctor said was the likely scenario given that Plaintiff was gay. Frank coldly said "Oh - hope everything works out" and hung up the phone abruptly. Plaintiff continued to work the rest of the day remotely from home.

29.     Nothing unusual happened the next day (Friday, February 9, 2018). Plaintiff worked from home that day. There were no unusual work-related issues that popped up. Frank did not communicate with Plaintiff that day other than to email the entire team that

she was cancelling her daily end-of-the-day meeting where Frank's direct reports would update her on what they did that day.

*Termination*

30. The next Monday, Plaintiff was abruptly fired. At around 7:30 am on February 12, 2018, Plaintiff reported to work. Plaintiff went to Frank's office to let her know that he was back to work at the office because his groin lymph node was no longer swollen to the size of a golf ball. Frank did not say anything and waved Plaintiff away as if she were bothered by and/or too busy for him. Shortly thereafter, Frank sent an email to everyone on the team in which she wrote that Managing Director Mike Ray was going to be in the office that day. After Mr. Ray arrived at the office, Frank quickly summoned Plaintiff into a conference room for a meeting with her and Mr. Ray at around 8:30 am or so.

31. At the meeting, Frank told Plaintiff that he was fired. Shocked, Plaintiff asked: "Does this have anything to do with my medical leave?" Frank responded "no" and claimed that it was a completely coincidental performance-related termination. Puzzled by such a strange answer, Plaintiff replied: "That doesn't make any sense. I haven't had a performance review in over a year and I'm performing well above the entire team."

32. At this point, Mr. Ray interjected: "For a tenured BDM, you're not where you are supposed to be." Plaintiff responded: "Victoria [Espinoza] is a BDM and is as tenured as I am, and she's ranked last in performance." Frank then blurted out in a nervous manner: "This isn't about Victoria; it's about you." Bewildered, Plaintiff commented to Frank: "But you've texted me multiple times complaining about Victoria being on Google Chat all day as well how distracting her typing on her keyboard is." Not wanting to answer

any more questions or try to explain the rationale for firing Plaintiff, Frank simply repeated nervously: "Again, this about you and the decision is final."

33.     As a result of Defendant's conduct, Plaintiff has suffered loss of wages and benefits, as well as severe emotional distress.

## COUNT I

### Title VII Discrimination Claim/Sex/Termination

34.     Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

35.     Plaintiff is a member of a protected class in that he is a male and was discriminated against because of his sex.

36.     At all relevant times, Plaintiff was qualified for the position and was able to perform his job.

37.     Plaintiff suffered an adverse employment action in that he was fired by Defendant on February 12, 2018.

38.     Plaintiff was treated by Defendant differently and less favorably than similarly situated female employees because of his sex.

39.     Defendant terminated Plaintiff because of his sex.

40.     As a result of Defendant's discriminatory conduct, Plaintiff was damaged and has suffered the loss of wages, benefits, humiliation, embarrassment, emotional distress, and other compensatory damages. The discriminatory actions by Defendant were undertaken deliberately and intentionally and with malice and reckless indifference to Plaintiff's civil rights. The acts complained of were authorized and permitted by Defendant and its officers, managers, and supervisors.

41.     Defendant's justifications for its actions are simply pretextual assertions meant to conceal its discriminatory intent and not taken in good faith.

WHEREFORE, Plaintiff prays that this Court:

a.     Declare, decree, and adjudge that Defendant has violated Title VII;

b.     Grant a preliminary and permanent injunction against Defendant and its officers, agents, and managers from violating Title VII;

c.     Compel the Defendant and its officers, agents, and managers to comply with Title VII and refrain from discriminating against Plaintiff and interfering with his rights and protections under Title VII and awarding appropriate equitable relief;

d.     Award the Plaintiff backpay, frontpay, employment benefits, and other compensation that was denied or lost;

e.     Order the Defendant to pay Plaintiff compensatory and punitive damages in an amount sufficient to punish Defendant for its past discrimination and to deter it from continuing with its discriminatory practices;

f.     Award Plaintiff all pre-judgment and post-judgment interest to which she is entitled;

g.     Award Plaintiff reasonable attorney's fees and costs; and

h.     Award such other and further relief as is just and appropriate, including nominal damages.

## COUNT II

### Title VII Discrimination Claim/Sexual Orientation/Termination

42.     Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

43.     Plaintiff is a member of a protected class in that he is a gay man and was discriminated against because of his sexual orientation.

44.     At all relevant times, Plaintiff was qualified for the position and was able to perform his job.

45.     Plaintiff suffered an adverse employment action in that he was fired by Defendant on February 12, 2018.

46.     Plaintiff was treated by Defendant differently and less favorably than similarly situated non-gay employees because of his sexual orientation.

47.     Defendant terminated Plaintiff because of his sexual orientation.

48.     As a result of Defendant's discriminatory conduct, Plaintiff was damaged and has suffered the loss of wages, benefits, humiliation, embarrassment, emotional distress, and other compensatory damages. The discriminatory actions by Defendant were undertaken deliberately and intentionally and with malice and reckless indifference to Plaintiff's civil rights. The acts complained of were authorized and permitted by Defendant and its officers, managers, and supervisors.

49.     Defendant's justifications for its actions are simply pretextual assertions meant to conceal its discriminatory intent and not taken in good faith.

WHEREFORE, Plaintiff prays that this Court:

      a.     Declare, decree, and adjudge that Defendant has violated Title VII;

b.      Grant a preliminary and permanent injunction against Defendant and its officers, agents, and managers from violating Title VII;

c.      Compel the Defendant and its officers, agents, and managers to comply with Title VII and refrain from discriminating against Plaintiff and interfering with his rights and protections under Title VII and awarding appropriate equitable relief;

d.      Award the Plaintiff backpay, frontpay, employment benefits, and other compensation that was denied or lost;

e.      Order the Defendant to pay Plaintiff compensatory and punitive damages in an amount sufficient to punish Defendant for its past discrimination and to deter it from continuing with its discriminatory practices;

f.      Award Plaintiff all pre-judgment and post-judgment interest to which she is entitled;

g.      Award Plaintiff reasonable attorneys' fees and costs; and

h.      Award such other and further relief as is just and appropriate, including nominal damages.

## COUNT III

### ADA - Disparate Treatment/Termination

50.     Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

51.     At all relevant times, Plaintiff was an individual with a "disability" and/or was considered to have a "disability," as that term is defined in the ADA, as a result of his groin and lymph node condition and/or likely HIV diagnosis.

52.     Plaintiff had a physical or mental impairment that substantially limited one or more of his major life activities – including but not limited to his ability to sit for prolonged periods of time, to stand, drive a vehicle, to lift objects of a certain weight and otherwise function – had a record of such impairment, and was regarded as having such an impairment.

53.     Plaintiff was qualified to perform the essential functions of his job as a business development manager with or without a reasonable accommodation.

54.     Plaintiff's similarly-situated employees who were not regarded as having a disability were treated more favorably than Plaintiff, as they were not terminated because of their disability.

55.     Defendant terminated Plaintiff because of his disability.

56.     As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights, Plaintiff has suffered great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, Plaintiff prays that this Court:

        a.     Enter judgment in favor of Plaintiff and against the Defendant for violation of Plaintiff's rights under the ADA,

        b.     Declare that the actions of the Defendant were discriminatory,

c. Award Plaintiff compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress,

d. Award Plaintiff punitive damages in such amount as the Court deems proper,

e. Award Plaintiff his costs, attorneys' fees and non-taxable expenses in this action, and

f. Grant Plaintiff such other and further relief as the Court deems equitable and just.

## COUNT IV

### Retaliation in Violation of the ADA

57. Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

58. At all relevant times, Plaintiff was an individual with a "disability" and/or was considered to have a "disability," as that term is defined in the ADA, as a result of his groin and lymph node condition.

59. Plaintiff had a physical or mental impairment that substantially limited one or more of his major life activities (e.g., including his ability to sit for prolonged periods of time, to stand, drive a vehicle, to lift objects of a certain weight and otherwise function), had a record of such impairment, and was regarded as having such an impairment. Plaintiff was qualified to perform the essential functions of his job as a business development manager with or without a reasonable accommodation.

60. Plaintiff requested reasonable accommodations to his disability, following which Defendant retaliated against him by terminating him after he made these requests.

WHEREFORE, Plaintiff prays that this Court:

Enter judgment in favor of Plaintiff and against the Defendant for violation of Plaintiff's rights under the ADA;

      a.    Declare that the actions of the Defendant were discriminatory;

      b.    Award Plaintiff compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress;

      c.    Award Plaintiff punitive damages in such amount as the Court deems proper;

      d.    Award Plaintiff his costs, attorneys' fees and non-taxable expenses in this action; and

      e.    Grant Plaintiff such other and further relief as the Court deems equitable and just.

**COUNT V**

**Violation of the ADA - Failure to Accommodate/Termination**

61. Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

62. At all relevant times, Plaintiff was an individual with a "disability" and/or was considered to have a "disability," as that term is defined in the ADA, as a result of his groin and lymph node condition.

63. Plaintiff had a physical or mental impairment that substantially limited one or more of his major life activities (e.g., including his ability to sit for prolonged periods of time, to stand, drive a vehicle, to lift objects of a certain weight and otherwise function), had a record of such impairment, and was regarded as having such an impairment. Plaintiff was qualified to perform the essential functions of his job as a business development manager with or without a reasonable accommodation.

64. The ADA prohibits an employer from discriminating against an individual based upon his disability.

65. The ADA requires an employer to provide reasonable accommodations to its disabled employees.

66. Following his February 7, 2018 medical visit, and up and until his termination on February 12, 2018, Plaintiff made requests for reasonable accommodations in the form of work from home requests supported by a physician's medical limitations note and personal requests, thereby asking the Defendant to make reasonable accommodations with respect to his disability.

67. The Defendant refused these requests by ultimately terminating Plaintiff on February 12, 2018.

68. Plaintiff's requested accommodations were reasonable, would not have been unduly burdensome for the Defendant, and could have been accommodated but for Defendant's bad faith.

69. As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights, Plaintiff has suffered great mental anguish, humiliation,

degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, Plaintiff prays that this Court:

a.  Enter judgment in favor of Plaintiff and against the Defendant for violation of Plaintiff's rights under the ADA,

b.  Declare that the actions of the Defendants were discriminatory,

c.  Award Plaintiff compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress,

d.  Award Plaintiff punitive damages in such amount as the Court deems proper,

e.  Award Plaintiff his costs, attorneys' fees and non-taxable expenses in this action, and

f.  Grant Plaintiff such other and further relief as the Court deems equitable and just.

## COUNT VI

### Retaliation in Violation of Family and Medical Leave Act

70.   Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

71.   Plaintiff requested FMLA leave on or about February 7, 2018, when he left work to attend an emergency doctor's appointment related to his groin condition.

72.   On or about February 12, 2018, Defendant terminated Plaintiff in retaliation for requesting leave under the FMLA.

73. As a consequence of Defendant's actions, Plaintiff has suffered and continues to suffer damages in the form of lost wages, benefits and compensation plus interest.

74. Pursuant to the FMLA, Plaintiff is also entitled to recover liquidated damages and his attorneys' fees in pursuing this claim.

75. WHEREFORE, the Plaintiff, respectfully requests this Honorable Court enter Judgment for the Plaintiff and award Plaintiff the following damages:

     a.     Back wages, health insurance coverage, benefits and other compensation lost as a result of Defendant's violation of the FMLA;

     b.     Front pay;

     c.     Interest;

     d.     Statutory damages in the maximum amount permitted by the Family;

     e.     Medical Leave Act; and

     f.     Attorneys' fees and costs in pursuing her claim.

<u>JURY DEMAND</u>

Plaintiff hereby demands trial by jury on all issues herein.

Respectfully submitted,
ERIC DELGADILLO

By: /s/ Michael A. Faccenda
      One of His Attorneys

Michael A. Faccenda
901 West Hillgrove Avenue
La Grange, IL 60525
Phone: 708-497-3077
Email: maf@connorsfaccenda.com
ARDC No. 6239317

By: /s/ Christopher P. Connors
      One of His Attorneys

Christopher P. Connors
901 West Hillgrove Avenue
La Grange, IL 60525
Phone: 312-994-2411
Email: cpc@connorsfaccenda.com
ARDC No. 6269559

**Exhibit 1**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☑ EEOC | 440-2018-04888 |

| Illinois Department of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Eric Deigadillo | 312-720-5667 | 06/27/1987 |

**Street Address**        City, State and ZIP Code

1428 N Greenview Ave, Apartment No. 2, Chicago, IL 60642

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Experis \| ManpowerGroup | 25,000+ | 414-961-1000 |

**Street Address**        City, State and ZIP Code

100 Manpower Place Milwaukee, Wisconsin 53212-4030

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

**Street Address**        City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☑ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☑ RETALIATION ☐ AGE ☑ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 02/07/2018 | 02/12/2018 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent in or about February 2016 as a Business Development Manager in Manpower's Chicago office of its Experis Engineering Business Unit, which is located in Chicago. During my employment I was subjected to discrimination and retaliation, including my termination on February 12, 2018.

I believe I have been discriminated against by Respondent because of my sex (male), sexual orientation (gay), and disability (actual and regarded as ■) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §12101, et seq., Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "ADA"), and the Illinois Human Rights Act, 775 ILCS 5/1-101, et seq. (the "IHRA"). I also believe I was retaliated against by Respondent when it terminated me because I requested a reasonable accommodation for my disability under the ADA in violation of the ADA and the IHRA.

I am a member of a protected class (i.e., gay, male, disability). I was qualified for the position I held. I suffered an adverse employment action (i.e., my February 12, 2018 termination). And the termination occurred under circumstances giving rise to an inference of discrimination based on sex, sexual orientation, and disability and an inference of retaliation based on my reasonable ADA request for an accommodation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 4/25/18     _[signature]_ <br> Date      Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

RECEIVED EEOC

CHICAGO DISTRICT OFFICE

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Exhibit 2

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Eric Delgadillo | From: | Chicago District Office |
|---|---|---|---|
| | c/o Christopher P. Connors, Esq. | | 500 West Madison St |
| | CONNORS & FACCENDA | | Suite 2000 |
| | 901 W. Hillgrove Ave. | | Chicago, IL 60661 |
| | La Grange, IL 60525 | | |

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2018-04888 | Grace Swierczek, Investigator | (312) 869-8144 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Julianne Bowman,**
**District Director**

5/29/18
*(Date Mailed)*

cc: **MANPOWERGROUP**
c/o Jonas Prising
**Chief Executive Officer**
**100 Manpower Place**
**Milwaukee, WI 53212**